

NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed December 28, 2006
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| AVADO BRANDS, INC., f/k/a APPLE | § | Case No. 04-31555 HDH-11 |
| SOUTH, INC., *et al*., | § | (Jointly Administered) |
| | § | |
| Debtors | § | |

---

| | | |
|---|---|---|
| WILLIAM KAYE, TRUSTEE OF AVADO | § | |
| BRANDS, INC. LITIGATION TRUST, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 05-3823 |
| | § | |
| THOMAS E. DUPREE, JR., LOUIS J. | § | |
| PROFUMO, MARGARET E. WALDREP, | § | |
| ERICH J. BOOTH, JEROME A. | § | |
| ATKINSON, WILLIAM V. LAPHAM, | § | |
| EMILO ALVEREZ-RECIO | § | |
| and ROBERT SROKA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION ON MOTIONS TO DISMISS
## AND MOTION FOR SUMMARY JUDGMENT

In the instant adversary proceeding, William Kaye, Trustee of the Avado Brands, Inc.

Litigation Trust ("Trustee") has filed a Complaint against several of the former officers and directors

of the Debtors ("Complaint").  In his Complaint, the Trustee refers to the Defendants who were

members of the board of directors, other than Thomas E. DuPree, Jr. ("DuPree"), as the "Directors"

or "Director Defendants" and refers to the former officers (DuPree, Waldrep, Profumo and Booth)

as "Officer Defendants."  DuPree and Waldrep were both officers and directors of Avado, and the

other Director Defendants (Atkinson, Lapham, Alvarez-Recio and Sroka) are sometimes referred to

as the "Outside Directors" or "Outside Director Defendants." The Court has tried to use the same

terminology throughout this opinion.

### *Causes of Action*

The Original Complaint filed by the Trustee asserts various causes of action against the

Defendants on the following nine counts: (1) Avoidance and recovery of Preferences from DuPree;

(2) Avoidance and recovery of Preferences from Waldrep; (3) Avoidance of the Release Agreement,

against DuPree and the Director Defendants; (4) Breach of Fiduciary Duty–Dupree Loans and

Refinancing, against DuPree; (5) Breach of Fiduciary Duty–Dupree Loans and Refinancing, against

the Director Defendants (6)  Breach of Fiduciary Duty–Release Agreement, against the Director

Defendants; (7)  Breach of Fiduciary Duty–Corporate Waste, against all Defendants; (8) Deepening

Insolvency–against all Defendants; and (9) Common Law Fraud–against DuPree.

### *The Motions Before the Court*

Defendants William V. Lapham ("Lapham"), Jerome A. Atkinson ("Atkinson"), Emilio

Alvarez-Recio ("Alverez-Recio") and Robert Sorka ("Sorka"), collectively referred to herein as the "Outside Director Defendants," filed a motion to dismiss counts 3 and 5-8 of the Complaint ("Outside Director Defendants' Motion to Dismiss").  Defendant Margaret E. Waldrep ("Waldrep") filed a motion to dismiss counts 3, 5 and 7-8 of the Complaint ("Waldrep's Motion to Dismiss"). DuPree filed a motion to dismiss all counts asserted against him ("DuPree Motion to Dismiss"). Defendant Louis J. Profumo ("Profumo") filed a motion to dismiss counts 7 and 8 ("Profumo Motion to Dismiss").  Defendant Erich J. Booth ("Booth") filed a combined motion to dismiss counts 7 and 8, and alternatively, a motion for summary judgment on count 7 ("Booth Motion").

The Trustee responded to all of the motions and the Court set the matters for hearing.  All parties presented argument at the hearing.  After reviewing the pleadings and hearing the argument of counsel, the Court took the motions under advisement for further consideration.  For the purpose of the motions to dismiss, the Court will adopt the factual allegations in the Complaint as true and will draw all factual inferences in favor of the Trustee's position and against the Defendants.  For the summary judgment motion, the Court will apply the procedural and evidentiary standards required under federal law, as set out later in this opinion.

## *Jurisdiction*

This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district.  Counts 1-3 in the Complaint are core proceedings, pursuant to 28 U.S.C. § 157(b)(2).  The other counts are non-core claims that the Court may hear, pursuant to 28 U.S.C. § 157(c)(1), and have been referred to this Court by the District Court for determination of all pre-trial matters.

I.      **BACKGROUND FACTS**[1]

According to the Trustee's Complaint, beginning as early as 1998, Avado experienced financial difficulties as a result of a burdensome debt level and the resultant debt service requirements. Throughout 2002 and 2003, Avado's financial performance continued to deteriorate, leading to an inability to satisfy debt requirements. On February 4-5, 2004, Avado and its affiliated companies filed Chapter 11 bankruptcy petitions.

**The DuPree and Waldrep Loans**

In November and December of 1998, Avado made three unsecured loans to DuPree in the total amount of $7,851,500. The original interest rate for these loans was 7 percent per year. As originally drafted, the promissory notes provided for interest to be paid quarterly. However, this provision was later changed to provide that all interest was payable at maturity. The stated maturity dates for these notes were originally in November and December, although Avado had the right to call the notes for repayment on demand at any time prior to their stated due dates.

As the financial condition of Avado deteriorated, the Directors chose not to exercise Avado's right to repayment of the loans, and instead loaned DuPree another $3,000,000 in October of 1999. This fourth note had an interest rate of 8.5 per cent per year and was due and payable in full two months later, December 31, 1999. This fourth note was secured by three parcels of real estate owned by DuPree.

Avado also made three loans to Waldrep in 1998, totaling $41,500 with an interest rate of 5.06 percent per year, payable in October and November 1999. In November 1999, the Directors changed

---

[1] These facts are largely taken from the Complaint as alleged by the Trustee and do not constitute findings of fact by the Court.

the interest rate on these loans to 8.43 percent and extended them to December 31, 1999. Also in December of 1999, DuPree requested and the Directors agreed to release the lien on one of the parcels of real estate that had been pledged for the fourth loan.

On December 28, 1999, three days before Dupree's fourth loan and the Waldrep Loans were due and payable, the Directors held a Special Telephone Meeting at which DuPree requested further extensions. The Directors once again obliged, extending the loans to the earlier of June 30, 2000, or the consummation of a proposed management buy-out of Avado. The extended interest rate on the DuPree fourth loan was 9.84%.

In June of 2000, DuPree still was not prepared to pay off the loans and requested yet another extension, and the Directors consented to a further extension, this time until June 30, 2002, for all of the loans. The interest rate on all of the loans was increased to 11.5%, but, again, interest was not payable until maturity. Avado failed to disclose in its filings, with the SEC or otherwise, any reason for the two-year extension of the maturity date, and also failed, as required by Item 601 of Regulation S-K, to file with the SEC any of the underlying documentation for the DuPree Loans in connection with its continuing annual and quarterly SEC reporting obligations under the Exchange Act on Forms 10-K and 10-Q.

As of December 31, 2001, the total amount owed to Avado by DuPree under this series of related loan transactions was approximately $10.9 million in principal and $3.0 million in accrued interest. The due date of these notes was June 30, 2002, with only one note secured by certain real estate collateral allegedly valued at $2.8 million. The Waldrep Loans totaled $41,500 in principal plus accrued interest.

**The 2002 Refinancing**

In 2002, when the DuPree Loans plus accrued interest amounted to more than $14 million, DuPree was unable or unwilling to repay the loans or even to pay interest on the loans. Accordingly, in February 2002, the Outside Directors authorized Avado to refinance the loans by extending the due date for repayment for another seven years, until 2009. In addition, DuPree demanded that Avado release certain collateral that had been pledged in connection with the loans and the Outside Directors acquiesced. This collateral consisted of real estate valued at less than $3 million. The refinancing entailed the sale of the real estate which yielded $2.8 million. The proceeds from the sale were used to purchase $14 million in face value of Avado's subordinated debt ("Subordinated Debt") which DuPree purchased for only about twenty cents on the dollar. The Subordinated Debt was then substituted as collateral with respect to the loans.

In addition, the principal and interest payment terms of the DuPree Loans were changed to mirror the Subordinated Debt that was substituted as collateral. Thus, the semiannual interest payments on the refinanced note were structured to coincide with the interest payments on the Subordinated Debt such that Avado's interest payments on the debt would pass back to Avado to discharge DuPree's interest payment obligations on the DuPree Loans. As a result, DuPree was able to postpone any repayment of principal on the loans for another seven years and was also relieved of any obligation to pay interest on the loans.

According to the Trustee, all of these transactions provided no benefit whatsoever to Avado and were instead intended to benefit DuPree, a quintessential insider. The Trustee further alleges that the Outside Directors' approval of these transactions, at a time when Avado's financial condition was steadily deteriorating, demonstrated a complete lack of business judgment.

**Other Activities Alleged by Trustee**

Apart from the issue of the DuPree Loans, the Trustee claims the Defendants engaged in other activities which adversely affected Avado. Thus, in June 2002, the Officer Defendants proposed, and the Outside Directors, and DuPree and Waldrep approved, a $5.4 million accrued interest payment to holders of Avado Financing Inc.'s "TECONS" notwithstanding Avado's growing liquidity crisis and the fact that Avado was able to defer these payments. This transaction benefitted DuPree who was a holder of TECONS.

In addition, during the latter half of 2002, the Officer Defendants proposed, and the Outside Directors, and DuPree and Waldrep approved, the expenditure of $8.5 million to repurchase $52.4 million face amount of Avado's Subordinated Debt again not withstanding Avado's liquidity crisis and the absence of any obligation by Avado to enter into the repurchase agreement. This transaction was also intended to benefit DuPree by increasing the likelihood that Avado could continue to pay interest on the Subordinated Debt which was pledged to secure the DuPree Loans.

In 2003, the Outside Directors came to the belated realization that DuPree was mismanaging Avado and that he had to be ousted. To this end, the Outside Directors scheduled a meeting for November 2, 2003. The response of DuPree and Waldrep was to obtain a temporary restraining order, in a Georgia state court, enjoining the Board from holding the meeting. The lawsuit also lodged frivolous claims against the Outside Directors individually. The Outside Directors were ultimately successful in having the TRO dissolved. Thereafter, the parties entered into negotiations resulting in: (1) a Separation and General Release Agreement dated November 8, 2003, concerning DuPree ("DuPree Release Agreement"); and (2) a Separation and General Release Agreement dated

November 8, 2003, concerning Waldrep ("Waldrep Release Agreement"). Pursuant to the DuPree Release Agreement, DuPree agreed to resign all his positions at Avado and dismiss the lawsuit. DuPree was granted certain severance payments and the vesting of certain stock options. The DuPree Release Agreement also provided releases running from DuPree to Avado (including the release of the frivolous claims against the Directors) and from Avado to DuPree. The Waldrep Release Agreement has virtually identical provisions as those set forth above.

According to the Trustee, in large part as a result of the mismanagement of Avado by DuPree and the other Defendants, Avado and its affiliated companies filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 4-5, 2004. The filing in the Northern District of Texas was authorized by the Outside Directors. Subsequently, Avado adopted a Modified Joint Plan of Reorganization dated April 20, 2005 which was approved by the Court on April 26, 2005.

As part of the Debtors' Modified Joint Plan of Reorganization ("Plan"), a Litigation Trust was formed pursuant to a Declaration of Trust ("Trust Agreement") between Avado and its affiliated debtors and debtors-in-possession, and the Plaintiff as Litigation Trustee.

## II.    ISSUES

The motions contain the following issues:

1.    Does the Court have post-confirmation subject matter jurisdiction over the Trustee's claims?

2.    Does Georgia law exculpate the Outside Director Defendants from liability for the Trustee's breach of fiduciary duty claims asserted against them?

3.    Should Count 3 in the Trustee's Complaint, seeking an avoidance of the release agreement with DuPree, be dismissed as to either the Outside Director Defendants or Waldrep because any release of claims was to them was only made by DuPree, and not Avado?

4.      Are the claims against Waldrep, Profumo or Booth for breach of fiduciary duties barred by the applicable statute of limitations?

5.      Is the fraud claim properly plead or properly made against DuPree?

6.      Does the Trustee have standing to bring any claims against Waldrep, Profumo or Booth?

7.      Does the Trustee have standing to bring the avoidance claims against DuPree?

8.      Should the claims against DuPree be dismissed because of his release agreement with Avado?

9.      Trustee's claims against Booth barred by Georgia's statute of limitations as a matter of law?

10.     Is "deepening insolvency" a viable cause of action under Georgia law?

## III.     ANALYSIS

### Legal Standard for Motions to Dismiss and Motions For Summary Judgment

*Motions to Dismiss*

The Motion to Dismiss challenges the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. A motion to dismiss under Rule 12(b)(6) is for the complaint's failure to state a claim upon which relief can be granted. A complaint may not be dismissed for failure to state a claim upon which relief may be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 L.Ed.2d 80 (1957); *Benton v. United States*, 960 F.2d 19, 20 (5th Cir. 1992).

In applying this test, a court must consider the facts and reasonable inferences drawn from

the pleadings in the light most favorable to the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 591, 284 (5th Cir. 1993). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

Although a court, in making its determination must take all facts pleaded in the complaint as true and must liberally construe the complaint in favor of the plaintiff, the plaintiff has an obligation to plead specific facts, not mere conclusory allegations. *Collins*, 224 F.3d at 498(citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). To the extent that the plaintiff's claims set forth conclusory allegations or unwarranted deductions of fact, a court is not obliged to accept such allegations or deductions as true. *Id*. (citation omitted).

*Motions For Summary Judgment*

Summary judgment is proper if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of articulating the basis for its motion and identifying evidence, which shows that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Material issues are those that could affect the outcome of the action. *Wyatt v. Hunt Plywood, Co. Inc.,* 297 F.3d 405, 409 (5th Cir. 2002).

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other

admissible evidence that specific facts exist over which there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* , 475 U.S. 574, 586-87 (1986); *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1046-47 (5th Cir.1996). The burden is on the non-movant to make a showing sufficient to establish an issue of fact for each element as to which that party will have the burden of proof at trial. *Epps v. NCNB Texas Nat'l Bank,* 838 F.Supp. 296, 299 (N.D. Tex.1993), *aff'd* 7 F.3d 44 (5th Cir.1993) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmovant's burden may not be satisfied by conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, metaphysical doubts as to the facts, or a mere scintilla of evidence; and legalistic arguments are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586-87; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc); *SEC v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993); *Wallace,* 80 F.3d at 1047.

The court must draw inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255. However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), revised on other grounds upon denial of reh'g, 70 F.3d 26 (1995); *see also Wallace,* 80 F.3d at 1048; *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum,* 66 F.3d at 92. Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

banc).

**Post-Confirmation Jurisdiction**

*Dupree Motion to Dismiss*

In his motion to dismiss, DuPree asserts that the Court lacks subject matter jurisdiction to hear the Trustee's breach of fiduciary duty claims against him because this proceeding was filed after confirmation of the Debtors' Plan, and these claims are non-core. The Trustee points to the retention of jurisdiction provisions of the Plan and concludes that because the claims asserted in this proceeding are pre-petition claims, were reserved under the Plan, and were assigned to the Litigation Trust for prosecution and for any distribution of proceeds obtained to holders of Allowed Claims under the Plan, litigation of these claims impacts compliance with or completion of the Plan; and therefore, the Court has subject matter jurisdiction.

"As a starting point, there is no question that analysis of a bankruptcy court's subject matter jurisdiction over post-confirmation suits must begin with 28 U.S.C. § 1334(b)." *Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp. 1997, L.P.)*, 351 B.R. 813, 835 (Bankr. S.D. Tex. 2006) (citing *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.),* 301 F.3d 296, 303-304 (5th Cir. 2002); *Coho Energy, Inc. v. Finley Resources, Inc. (In re Coho Energy, Inc.),* 309 B.R. 217, 220 (Bankr. N.D. Tex. 2004)). Section 1334(b) defines jurisdiction conjunctively as either "arising under," "arising in," or "related to" a case under Title 11. *Id*. The claims in dispute in the present motion do not "arise under" or "arise in" Title 11, but are "related to" the bankruptcy case.

The scope of "related to" jurisdiction pre-confirmation is broad, and has been defined as existing anywhere "the outcome of the proceeding *could conceivably have an effect* on the debtor's estate." *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987) (emphasis added). While

recognizing that Section 1334 does not expressly limit bankruptcy court jurisdiction upon plan confirmation, the Fifth Circuit has stated that the definition of "related to" is somewhat narrowed post-confirmation. *See U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.),* 301 F.3d 296, 304 (5th Cir. 2002); *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)* 266 F.3d 388 (5th Cir.2001). *Craig's Stores* defined post-confirmation "related to" jurisdiction as limited to "matters pertaining to the implementation or execution of the plan." *In re Craig's Stores*, 266 F.3d at 390. In discussing the decision in Craig's Stores, Judge Houser noted in *In re Coho* that:

> The Fifth Circuit concluded that the bankruptcy court lacked jurisdiction because: (I) the claims principally dealt with post-confirmation relations between the parties, (ii) there was "no antagonism or claim pending between the parties as of the date of the reorganization," and (iii) "no facts or law deriving from the reorganization or the plan were necessary to the claim asserted by [the debtor] against the [b]ank." The Court rejected the argument that jurisdiction existed because the status of its contract with the bank would affect its distribution to creditors under the plan, noting that the "same could be said of any other post-confirmation contractual relations ...."

*Coho Energy, Inc. v. Finley Resources, Inc. (In re Coho Energy, Inc.),* 309 B.R. 217, 220 (Bankr. N.D. Tex. 2004) (quoting *In re Craig's Stores*, 266 F.3d at 391) (internal citations omitted). "In *In re U.S. Brass Corp.,* the Fifth Circuit clarified its ruling in *In re Craig's Stores* by holding that a bankruptcy court has post-confirmation jurisdiction only for disputes concerning the implementation or execution of a confirmed plan pursuant to 28 U.S.C. § 1142(b) or over core proceedings under § 157. 301 F.3d at 304-06." *Encompass Services Corp. v. Air Systems, Inc. (In re Encompass Services Corp.),* 337 B.R. 864, 872 (Bankr. S.D. Tex. 2006).

In *Encompass Services Corp.*, a well-reasoned opinion, Judge Bohm identified six pertinent factors for a post-confirmation subject matter jurisdiction inquiry based on the Fifth Circuit's

decisions and subsequent cases interpreting them: (1) when the claim at issue arose; (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits; (3) whether the plan has been substantially consummated; (4) the nature of the parties involved; (5) whether state law or bankruptcy law applies; and (6) indices of forum shopping. *In re Encompass Services Corp.* 337 B.R. at 873.

Applying those comprehensive factors to the present case, the Court finds that it has subject matter jurisdiction over the claims asserted by the Trustee. These claims arose pre-petition and were provided for under the Plan and transferred to the Litigation Trust for prosecution by the Trustee. *See In re U.S. Brass Corp.,* 301 F.3d at 299-300; *In re Coho Energy, Inc.,* 309 B.R. at 221. This adversary proceeding was filed prior to substantial consummation of the Plan. The parties involved are former officers and directors of Avado and the Trustee, who is authorized under the Plan to liquidate all claims that were property of the estate and distribute them to the creditors holding Allowed Claims. *See Pam Capital Funding, LP v. New NGC, Inc. (In re Kevco, Inc.)*, 309 B.R. 458, 467 (Bankr. N.D. Tex. 2004). This proceeding involves both "core" and "non-core" claims, so that both state law and federal bankruptcy law will be considered to resolve the issues involved. Finally, there is no evidence of "forum shopping" by the Trustee.

### Does Georgia law exculpate the Outside Director Defendants from liability for the Trustee's breach of fiduciary duty claims?

Georgia's Business Corporations Act contains an exculpation provision for director liability. *See* Ga. Code Ann. § 14-2-202 (West 2006). In the Outside Director's Motion to Dismiss, they state that this provision was adopted in Avado's articles of incorporation, and that it protects them from liability on the Trustee's breach of fiduciary duty claims against them. Section 14-2-202 sates in

relevant part:

> (b) The articles of incorporation may set forth:
>
> ***
>
> (4) A provision eliminating or limiting the liability of a director to the corporation or its shareholders for monetary damages for any action taken, or any failure to take any action, as a director, except liability:
>
> ***
>
> (B) For acts or omissions which involve intentional misconduct or a knowing violation of law; or
>
> (D) For any transaction from which the director received an improper personal benefit, provided that no such provision shall eliminate or limit the liability of a director for any act or omission occurring prior to the date when such provision becomes effective.

Ga. Code Ann. § 14-2-202 (West 2006). The Trustee agrees that this provision was adopted by

Avado, but asserts that the Directors are still liable for intentional, wrongful, and grossly negligent

conduct, as alleged in the Complaint. There are no cases interpreting this provision. The Trustee

relies on cases interpreting a similar provision under Delaware law which allows adoption of:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (I) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit. No such provision shall eliminate or limit the liability of a director for any act or omission occurring prior to the date when such provision becomes effective.

Del. Code Ann. Tit. 8 § 102(b)(7) (West 2006). In his brief, the Trustee asserts that Georgia's statute

is recognized as having followed Delaware's lead and as embodying the same basic concepts as

codified by Delaware. The Trustee cites to various commentators in support of this position. *See*

Cindy A. Schipani, *Integrating Corporate Law Principles With CERCLA Liability For*

*Environmental Hazards*, 18 Del. J. Corp. L. 1, 21 (1993)(describing Georgia's statute as part of a

group of statutes similar to Delaware's); Bartley A. Brennan, *Current Developments Surrounding the Business Judgment Rule: A Race To The Bottom. Theory of Corporate Law Revived*, 12 Whittier L. Rev. 299, 320-21 (1991)(describing Georgia as one of thirty-six states that has enacted laws to limit liability for breaches of the duty of care.).

Georgia's statute is similar but not identical to Delaware's. One provision found in Delaware's exculpation statute specifically limits the ability of a corporation to absolve directors from breaches of the duty of loyalty; however, they both contain limitations on conduct that is intentional or knowing. In Delaware, this has been extended by case law to intentionally reckless acts and acts taken in bad faith. *See Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001) (section 102(b)(7) does not bar claims that defendants breached their duty of loyalty or acted in bad faith); *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001) (section 102(b)(7) does not exculpate directors from liability for violations of the duties of good faith and loyalty).

A recent decision by the Delaware Chancery Court in *In re Walt Disney Co. Derivative Litigation*, 825 A.2d 275, 289 (Del. Ch. 2003), stated that where the facts of the complaint, taken as true, "suggest that the defendant directors *consciously and intentionally disregarded their responsibilities*, adopting a 'we don't care about the risks' attitude," they sufficiently allege claims of intentional misconduct that fall outside of the exculpatory statutes. *Id*. (emphasis original). "Knowing or deliberate indifference by a director to his or her duty to act faithfully and with appropriate care is conduct. . . that may not have been taken honestly and in good faith to advance the best interests of the company" and, thus, constitutes intentional misconduct. *Id*. "Put differently, all of the alleged facts, if true, imply that the defendant directors knew that they were making material decisions without adequate information [or] deliberation, and that they simply did

not care." *Id*.

The Court finds this rationale instructive in interpreting the similar provisions in Georgia's exculpatory statute. The Complaint alleges that the Outside Directors breached their fiduciary duties of care, good faith and loyalty to Avado through their intentional, wrongful and/or reckless conduct. At this early stage of the litigation, reviewing the Outside Director's Motion to Dismiss against the Trustee's Complaint and accepting the facts pled in the Complaint as true, the Court finds that the Exculpation provisions in Avado's articles of incorporation do not protect the Outside Directors from liability.

### Avoidance of the Release Against Waldrep and the Outside Directors

The Outside Directors claim that Count 3 of the Complaint, which seeks to set aside the DuPree Release Agreement as a fraudulent transfer, must be dismissed as to them. They argue that Avado did not transfer to them any interest in property, because they were not released by Avado, but only by DuPree. Since there was no transfer (or release) from Avado to the Outside Director Defendants, they claim there was no fraudulent conveyance as to the Outside Director Defendants. *See Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 365 (N.D. Fla. 1995) ("An essential element in a fraudulent transfer action is that the debtor have had an interest in the property transferred. A fraudulent transfer may not be avoided under Section 548(a) if the debtor had no interest in the property transferred."), *aff'd without op.*, 83 F.3d 436 (11th Cir. 1996); *Cambridge Tempositions, Inc. v. Cassis (In re Cassis)*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998) (same).

The Debtors provided a release to DuPree, and DuPree provided a release to the Debtors and the Outside Director Defendants. As between the Debtors and the Outside Director Defendants,

nothing was released and nothing changed hands. The Outside Director Defendants argue that, as a matter of law, there is thus no "transfer *of an interest of the debtor in property*," to avoid as to the Outside Director Defendants. *See*, 11 U.S.C. § 548(b) (emphasis added).

As the Court understands the argument, the Trustee asserts that DuPree Release Agreement should be set aside as a fraudulent or preferential transfer as between Avado and Dupree. The Trustee cites to *Metzger v. Farris (In re e2 Communications, Inc.)*, 320 B.R. 849 (Bankr. N.D. Tex. 2004), where that court found that a cause of action constitutes property of the estate, and that a release of claims is itself a transfer of property of the estate that is subject to being avoided. *Id*. at 855.

The Trustee is not trying to avoid the transfer from DuPree to the Outside Directors, he wants to avoid the alleged transfer made from Avado to DuPree. The question is, who can he collect the value of the transfer from if the transfer is avoided? Section 550 of the Bankruptcy Code is the provision used by a trustee (or a debtor in possession) to recover property (or the value of such property) transferred by a debtor when the trustee successfully avoids a transfer under the avoidance sections of the Bankruptcy Code. Specifically, Section 550(a) provides, in relevant part, that:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from-
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a). The Complaint alleges that the Outside Directors received a benefit from the transfer (the release of all claims against them by Dupree), and thus are liable for the ultimate

recovery of the value of the transfer.

Although the question is close and a novel one, this Court is not inclined to dismiss this claim of the Trustee at this stage of the proceeding.  It may well be that these claims will be resolved later, at the summary judgment stage.

### Are the Claims Against Waldrep, Profumo and Booth for Breach of Fiduciary Duties Barred by the Applicable Statute of Limitations?

Waldrep, Profumo and Booth assert in their motions to dismiss that the breach of fiduciary duty claims against them contain activities complained of by the trustee that fall outside the applicable statute of limitations.  "A complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action."  *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The applicable statute of limitations in the present case is determined both under Georgia law and the Bankruptcy Code.

The applicable statute of limitations under Georgia law for bringing causes of action against officers and directors for breaching their fiduciary duties is four years from the date the cause of action accrued.  *See Resoluton Trust Corp. v. Artley*, 28 F.3d 1099, 1101 (11th Cir. 1994) (citing *Council v. Brown*, 107 S.E. 867, 871 (Ga. 1921).  Section 108 of the Bankruptcy Code extends this limitations period and  provides in pertinent part:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of–

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) two years after the order for relief.

11 U.S.C.A. § 108(a). Thus, if the claims asserted by the Trustee for breach of fiduciary duty arose over four years prior to the Petition Date, then they are barred and should be dismissed. The Debtors' bankruptcy case was filed on February 4, 2004. The activity complained of would have had to occur on or after February 4, 2000. Further the Trustee was required to file these claims prior to February 4, 2006, which he did on December 9, 2005.

The Trustee's complaint contains allegations of wrongful conduct occurring as early as 1998; however, the Trustee has responded to the motions to dismiss under this ground that these activities were included merely for background, and the loans complained of were extended within the limitations period. It is these extensions requested by DuPree and Waldrep and authorized by the Directors that the Trustee asserts violated their duties to Avado.

Accordingly, all claims that arose prior to February 4, 2000, should be dismissed., as barred by the statute of limitations.

### Is the Fraud Claim Properly Plead or Properly Made Against Dupree?

Under Georgia law, the elements of fraud are: (1) false representation by the defendant; (2) knowledge of the falsity or reckless disregard for the truth; (3) intent to induce others to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff. *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 769 n.1, 208 S.E.2d 794, 797 n.1 (1974); *Eastern Motors Co. v. Lavender*, 69 Ga. 48, 52, 24 S.E.2d 840, 842 (Ga. Ct. App. 1943).

For fraud claims pled in federal bankruptcy court, Bankruptcy Rule 7009 applies the same pleading standard as under FRCP 9(b). Fed. R. Bankr. P. 7009. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Fifth Circuit has stated that "Rule 9(b) requires that the plaintiff allege 'the particulars of

time, place, and contents of the false representations,' as well as the identity of the person making

the misrepresentation and what that person obtained thereby, otherwise referred to as the 'who,

what, when, where, and how" of the alleged fraud.' *United States ex rel. Willard v. Humana Health

Plan of Tex., Inc.,* 336 F.3d 375, 384 (5th Cir.2003) (citing *Williams v. WMX Techs.,* 112 F.3d 175, 179

(5th Cir.1997); *Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir.1997)). The

Rule specifically permits the defendant's state of mind to be alleged generally. Fed. R. Civ. P. 9(b).

In his motion to dismiss, DuPree argues that the Complaint does not allege that DuPree knew

his false representations were false. After a careful review of the Complaint, the Court finds that the

Complaint makes sufficient allegations that, at the time DuPree made these false representations, he

had no intention of fully repaying the loans with interest. The Complaint sets forth the elements of

fraud under Georgia law, including that DuPree knew at the time he represented that he would fully

repay the DuPree Loans with interest, that such representation was false.

Further, the complaint is sufficient under Rule 9(b). The detailed allegations in the Complaint

set forth specific false representations made by DuPree at specific times to Avado's Board of

Directors. Further, they set forth that those representations were calculated to obtain $10 million

from Avado without repaying the interest or principal**.**

### Trustee's Standing to Bring Any Claims Against Profumo and Booth

Profumo and Booth argue that pursuant to Section 44-12-24 of the Georgia Code, a right of

action for personal torts or for injuries arising from fraud to the assignor may not be assigned." Ga.

Code Ann. § 44-12-24 (West 2006)**.** They argue that the Trustee's claims against them fall under this

definition and cannot be assigned to the Litigation Trust as a matter of Georgia law, and therefore

the Trustee lacks standing to bring these claims. The Trustee contends that even if this section of

Georgia's code is applicable to the causes of action asserted by the Trustee against Profumo and

Booth, it has been preempted by federal law by the Bankruptcy Code. *See* 11 U.S.C. § 541(c)(1)(A);

*see also*, *United Technologies corp. v. Gaines*, 483 S.E.2d 357, 358 (Ga. Ct. App. 1997).  Section

541 of the Bankruptcy Code provides in relevant part:

> (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in
> property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this
> section notwithstanding any provision in an agreement, transfer instrument, or applicable
> nonbankruptcy law–
>
> (A) that restricts or conditions transfer of such interest by the debtor.

11 U.S.C.A. § 541(c)(1)(A).  In *Dennis v. Delta Airlines, Inc.*, 546 S.E.2d 805 (Ga. Ct. App. 2001),

the court followed the decision in *Gaines* in holding that, despite Georgia's anti-assignment statute,

a cause of action becomes part of the bankruptcy estate "by the express preemptive operation of

federal law. *Id*. at 807.

"Furthermore, § 1123 of the Bankruptcy Code allows a plan of reorganization to provide for

'the retention and enforcement by the debtor, by the trustee, or by a representative of the estate

appointed for such purpose, [of any claim or interest belonging to the debtor or to the estate].' 11

U.S.C. § 1123(b)(3)(B). Section 1123(b)(3)(B) allows a plan to transfer avoidance powers to a party

other than the debtor or the trustee." *Official Employment-Related Issues Committee of Enron

Corp. v. Lavorato (In re Enron Corp.)*, 319 B.R. 128, 132 (Bankr. S.D. Tex. 2004) (Felsenthal, J.)

(quoting *In re Texas General Petroleum Corp.*, 52 F3d 1330 (5th Cir. 1995)).  In the present case, the

Debtors remained in possession off all of their assets, including these claims, and the confirmed Plan

transferred the claims to the Litigation Trust for prosecution by the Trustee.

### Trustee's Standing to Bring the Avoidance Claims Against Waldrep and Dupree

In Waldrep's Motion to Dismiss and DuPree's Motion to Dismiss, they assert that under

Avado's Plan, the Trustee is not vested with the right to avoid and recover preferential transfers against them. Thus, the Trustee lacks standing to assert claims against them, and therefore the claims should be dismissed.

Pursuant to the Plan, Avado assigned certain claims to a Litigation Trust, the creation of which was authorized by Article XII of the Plan. The Plan was confirmed by the Bankruptcy Court. The Plan provides as follows:

> The Litigation Trustee shall have full authority to take any steps necessary to administer the Litigation Trust Assets, including, without limitation, the duty and obligation to liquidate Litigation Trust Assets, and, if authorized by majority vote of those members of the Litigation Trust Advisory Board authorized to vote, to pursue and settle any other trust claims.

Plan, § 12.4(c). "Litigation Trust Assets" are defined in the Plan as meaning "the Litigation Trust Actions and the Cash to fund the Litigation Trust as set forth in Article XII of this Plan and as set forth in the Litigation Trust Agreement." Plan, § 1.75. The "Litigation Trust Actions" means, *inter alia*, "(a) the Former Officer Actions, (b) the Former Officer Related Actions, and (c) such other Causes of Action to be identified in the Litigation Trust Agreement." Plan, § 1.72. *Standing as to DuPree*

The "Former Officer" is DuPree, Plan, § 1.55, and the "Former Officer Actions" are "any and all Causes of Action of Avado against the Former Officer." Plan, § 1.56. Finally, the "Former Officer Related Actions" are "any potential Causes of Action of Avado against any person who was an officer or director of Avado on or after the Petition Date relating to any Causes of Action which may be brought against the Former Officer." Plan, § 1.58. Thus, the Trustee has standing to bring these claims against DuPree.

*Standing as to Waldrep*

Section 1.4 of the Trust Agreement defines "Initial Litigation Trust Assets" as follows:

The assets described in Sections 1.75 and 1.72 of the Plan, including, among other things, the Former Officer Actions, the Former Officer Related Actions, and $250,000.00 in Cash contributed to the Litigation Trust pursuant to Section 12.2 of the Plan, as well as the following Causes of Action. All Causes of Action of the Debtors against any person who was an officer or director of Avado Brands, Inc. *prior to the Petition Date* but who was not an officer or director of Avado Brands, Inc. on or after the Petition Date.

Trust Agreement, § 1.4 (emphasis added). Since Waldrep admits she was an officer and director of Avado prior to the Petition Date, the Trustee has standing to pursue claims against her.

### Should the Claims Against Dupree Be Dismissed Because of His Release Agreement with Avado?

In addition to his arguments relating to standing, DuPree also argues that the DuPree Release Agreement, pursuant to which he obtained certain releases from Avado, precludes the Trustee from pursuing the avoidance actions against him. In support thereof, DuPree asserts that the Release Agreement is an executory contract which was never expressly rejected by Avado and therefore "rode through" the Plan and cannot now be rejected by Avado or the Trustee.

The DuPree Release Agreement is set forth in Plan Schedule 8.3 as a non-executory contract. The Plan also provided that "[i]f any lease or contract listed on Plan Schedule 8.3 is deemed to be executory by a Final Order of the Bankruptcy Court, the Debtors reserve their right to reject, assume, or assume and assign such unexpired lease or executory contract for 30 days after the entry of such Final Order." Plan, § 8.3.

Further, the "riding through" doctrine simply provides that "executory contracts that are neither affirmatively assumed or rejected by the debtor under § 365, pass through the bankruptcy unaffected." *In re Hernandez*, 287 B.R. 795, 799 (Bankr. D. Ariz. 2002). But "riding through" does not constitute de facto assumption. *Id.* at 800. Similarly, the Fifth Circuit has held that: "there is no

difference between a contract that, under § 365(c)(1), cannot be assumed, and one which is neither assumed nor rejected. Each is simply unaffected by the bankruptcy proceedings." *In re O'Connor*, 258 F.3d 392, 405 (5th Cir. 2001).

The claim that has been asserted by the Trustee in Count 3 of the Complaint is that the DuPree Release Agreement should be set aside as a fraudulent transfer. *In Metzger v. Farris (In re e2 Communications, Inc.)*, 320 B.R. 849 (Bankr. N.D. Tex. 2004), a trustee of a creditors' trust brought an adversary proceeding against the former president and director of a Chapter 11 debtor to set aside, as a fraudulent conveyance, a release that had been executed by the debtor in favor of the former president. The suit also sought recovery for breaches of fiduciary duty by the former president. The various claims were interrelated to the extent that, if the release were found to be valid, it would release the breach of duty claims. The court found that the cause of action constitutes property of the estate, and that a release of claims "is itself a transfer of property of the estate that is subject to being avoided under applicable law." *Id.* at 855. Just as in Metzger, in the present complaint, the Trustee seeks to assert D&O claims against DuPree, and also seeks to set aside, as a fraudulent transfer, a release agreement that might bar those claims. Similarly, the present fraudulent transfer claim should not be dismissed, and for the same reasons, the Trustee's preference claim against DuPree should likewise not be dismissed.

### Are Trustee's Claims Against Booth Barred by Georgia's Statute of Limitations as a Matter of Law?

Booth argues that he is entitled to summary judgment on the Trustee's claims because the Complaint charges wrongdoing that took place in the period 1998-99 and in 2002, which is either outside the applicable statute of limitations, or is after Booth left Avado.

The Trustee asserts that Booth ignores the fact that a significant part of the Complaint deals

with the initial extension of the DuPree Loans that took place in 2000, a period that is well within the statute of limitations. (Complaint, ¶¶ 33-35.) In addition, by the end of 2001, when Booth was still the Chief Financial Officer of Avado, Defendants had permitted the DuPree Loans to grow to approximately $10.9 million in principal and $3.0 million in accrued interest. (Complaint, ¶ 35). The Complaint specifically charges that: "The initial extension of the DuPree Loans and the Refinancing also were both in violation of certain restrictive covenants. . . . In short, the Defendants created sham transactions that benefitted only themselves and were approved by a supine Board of Directors who did nothing to stop DuPree from looting Avado." (Complaint, ¶ 20.) The Complaint also alleges that: "As a direct result of the Defendants. misconduct, both with respect to the sweetheart DuPree Loans and the other irresponsible acts set forth above, Avado and its affiliated companies were forced to file for bankruptcy protection on February 4-5, 2004." (Complaint, ¶ 25.)

In addition, Count 7 of the Complaint, while referring to activity taking place in 1998-99 and in 2002, also alleges that Defendants, including Booth, wrongly permitted Avado to incur: "corporate level selling, general and administrative expenses at twice the rate normally incurred by comparable companies in Avado's line of business." (Complaint, ¶ 118.). This allegation is not limited in time.

Given that the facts cited by Booth are not undisputed by the Trustee, and the early stage of the proceedings in front of the Court, where little or no discovery has taken place, the Court finds that Booth's Motion for Summary Judgment should be denied.

### Deepening Insolvency

Several of the Defendants assert in their motions to dismiss that Georgia law does not recognize a claim of "deepening insolvency." This Court agrees.

In this Court's recent decision rejecting deepening insolvency as a separate tort under Texas

law, *Official Comm. of Unsecured Creditors of VarTec Telecom, Inc. v. Rural Tel. Fin. Coop. (In re VarTec Telecom, Inc.)*, 335 B.R. 631 (Bankr. N.D. Tex. 2005), the Court discussed the "deepening insolvency" theory in detail.  The ultimate conclusion reached by the Court in *VarTec* was that "deepening insolvency" would not be recognized as separate cause of action in Texas, but at best may be a theory of damages.  *Id*. Reaching the same result as  Judge Bernstein in the *Global Services Group* case, that "one seeking to recover for 'deepening insolvency' must show that the defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt."  *Kittay v. Atlantic Bank of New York (In re Global Service Group, LLC),* 316 B.R. 451, 456 (Bankr. S.D.N.Y. 2004) (Bernstein, C.J.).

If "deepening insolvency" exists as a separate tort, it would be found under state and not federal law; the courts that consider the theory of "deepening insolvency" to be an actionable tort do so by predicting state law.  *See e.g., Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,*  267 F.3d 340, 349-52 (3d Cir. 2001)(construing Pennsylvania law); *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Technologies, Inc.),* 299 B.R. 732, 750-52 (Bankr. D. Del. 2003)(construing Delaware law).  Therefore, in the present case, this Court must look to Georgia law.

Both the Outside Director Defendants and the Trustee concede that there are no Georgia decisions that address the validity of the theory of "deepening insolvency."  The Trustee suggests that the trend of recent cases is to recognize "deepening insolvency" as a viable cause of action; however, recent cases point in the opposite direction.  *Seitz v. Detweiler, Hershey & Assoc., P.C. (In re CitX Corp.),* 448 F.3d 672, 677 (3d Cir. 2006) (limiting the *Lafferty* decision to Pennsylvania and

requiring fraud as a prerequisite); *Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.)*, 2006 WL 3346191 (Bankr. D. Del. 2006); *Official Comm. of Unsecured Creditors of Verestar, Inc. v. American Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 477 (Bankr. S.D.N.Y. 2006); *Alberts v. Tuft (In re Greater Southeast Community Hospital Corp.)*, 330 B.R. 506, 517 (Bankr. D. Dist. Col. 2005); *Bondi v. Bank of America Corp. (In re Parmalat)*, 383 F.Supp.2d 587 (S.D.N.Y. 2005).

The Trustee also relies on the rationale in the Third Circuit's decision in *Lafferty*, noting that other courts have extended the decision's rational beyond Pennsylvania. *See Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Technologies, Inc.),* 299 B.R. 732, 751-52 (Bankr. D. Del. 2003); *In re LTV Steel Company, Inc.*, 333 B.R.397, 422 (Bankr. N.D. Ohio 2005); *Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781, 813-815 (Bankr. M.D. Tenn. 2005). However, the Third Circuit recently limited its decision in *Lafferty*, stating:

> Although some courts in this Circuit have extended *Lafferty's* reasoning to other states, *see, e.g., OHC Liquidation Trust v. Credit Suisse First Boston ( In re Oakwood Homes Corp.*), 340 B.R. 510, 531 (Bankr. D. Del. 2006) (holding that Delaware, New York, and North Carolina would recognize the cause of action), nothing we said in *Lafferty* compels any extension of the doctrine beyond Pennsylvania.

*In re CitX Corp., Inc.*, 448 F.3d at 680 n.11. It has also recently been rejected under Delaware law. *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP,* 906 A.2d 168 (Del. Ch. 2006) ("*Trenwick*").

Georgia law is controlling on the "deepening insolvency" claim in this case. In predicting state law, in this case, this Court should look in order to:

(1) decisions of the Georgia's Supreme Court in analogous cases;
(2) the rationales and analyses underlying Georgia's Supreme Court decisions on related issues;
(3) dicta by Georgia's Supreme Court;
(4) lower Georgia state court decisions;

(5) the general rule on the question;

(6) the rulings of courts of other states to which Georgia's courts look when formulating substantive law; and

(7) other available sources, such as treatises and legal commentaries.

*See, Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998). As stated above, the Georgia courts have not spoken on the issue of whether "deepening insolvency" is a viable cause of action or even whether it is a measure of damages. Thus this Court must look to the rationales and analyses underlying Georgia court decisions on the issue of recognizing a tort not previously recognized in Georgia.

Similar to the courts in Texas, as the Court found in *VarTec*, *see Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex. 1994), the Supreme Court of Georgia has held that where a full and adequate remedy for an injury already exists, it is "not necessary for [a court] to carve out a previously unrecognized cause of action." *Albany Urology Clinic, P.C. v. Cleveland*, 528 S.E.2d 777, 780 (Ga. 2000). Further, Georgia courts have expressed a reluctance to recognize new torts, even when those torts have been recognized in other jurisdictions. *See Owens v. American Refuse Systems, Inc,* 536 S.E.2d 782, 784 (Ga.App. 2000); *Sharpnack v. Hoffinger*, 499 S.E.2d 363 (1998). The Georgia Court of Appeals in *Owens* explains some of the history of Georgia jurisprudence in the area of considering whether to adopt the tort of spoilation of evidence:

> In *Gardner v. Blackston,* 185 Ga.App. 754, 755(1), 365 S.E.2d 545 (1988) (physical precedent only), we stated in dicta that Georgia law does not recognize spoilation of evidence as a separate tort. We again looked at the issue of spoilation as an independent tort in *Sharpnack v. Hoffinger,* 231 Ga.App. 829, 499 S.E.2d 363 (1998). We noted that the tort has been recognized in some jurisdictions, including California, Florida, and Alaska, and not recognized in others.

*Owens v. American Refuse Systems, Inc.,* 536 S.E.2d at 782. In *Sharpnack*, the court alluded to the fact that it may revisit the issue in the future, since it was not necessary to adopt spoilation as a tort

under the issues before the court to rule on the appeal. *Sharpnack*, 499 S.E.2d at 364-365. Upon

such a revisitation in *Owens*, the Court of Appeals stated:

> We join the majority of jurisdictions and decline to recognize an independent third-party tort of evidence spoliation in this case. A vigilant litigant already has traditional means of securing evidence available. Those means include, for example, a court order directing preservation, along with remedies for a violation of that order, or a contractual agreement with the property owner.

*Owens*, 536 S.E.2d at 784.

*VarTec* involved a deepening insolvency claim against a third party lender. In that case, the

court rejected deepening insolvency as a theory of liability under Texas law. This case presents a

claim made against officers and directors. Since *VarTec*, other courts have rejected similar claims

against similar parties and have not limited their holdings to lenders. *See, Trenwick*, 906 A.2d 168.

The trend seems to be a rejection of deepening insolvency as a theory of liability in general. This

Court concludes that Georgia would not adopt the theory of deepening insolvency as a tort, even

against former officers and directors in a case where breach of fiduciary duty has been asserted.

In the present case before the Court, the Trustee has an adequate remedy for the injuries he

alleges under his breach of fiduciary duty claims. The Court finds that based on the facts as

presented in this case, the courts in Georgia would not "carve out" a previously unrecognized cause

of action where a adequate remedy exists. *See Cleveland*, 528 S.E.2d at 780.[2]

Trustee's counsel shall submit separate orders for the pending motions, agreed to as to form.

### ###END OF MEMORANDUM OPINION###

---

[2]     This Court, an Article I federal court sitting in Texas, is particularly reluctant to recognize a new cause of action in Georgia, where neither the state legislature nor courts have spoken.